IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MINA COLEMAN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:21-cv-00484-SMD |
| | ) |
| KILOLO KIJAKAZI, | ) |
| *Acting Commissioner of Social Security,* | ) |
| | ) |
|     Defendant. | ) |

## OPINION & ORDER

Plaintiff Mina Coleman ("Coleman") applied for a period of disability and disability insurance benefits ("DIB") on May 19, 2016, alleging she became disabled on May 3, 2016. Tr. 108, 295-296. Coleman's application was denied at the initial administrative level. Tr. 107. She then requested and received a hearing before an Administrative Law Judge ("ALJ"), who found that Coleman was not disabled. Tr. 131-152, 61-93. Coleman appealed the ALJ's decision to the Social Security Appeals Council (the "Appeals Council"), which granted review and remanded her case back to the ALJ. Tr. 154. On review, the ALJ again found that Coleman was not disabled. Tr. 10-31, 32-60. Coleman then appealed that decision to the Appeals Council, which denied review. Tr. 1-6. Therefore, the ALJ's second decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner"). *See Chester v. Bowen*, 792 F.2d

129, 131 (11th Cir. 1986). Coleman now appeals that decision under 42 U.S.C. § 405(g).

For the reasons that follow, the undersigned AFFIRMS the Commissioner's decision.[1]

## I.    STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible

to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir.

1990). In making a benefits determination, an ALJ employs a five-step process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the

above questions leads either to the next question, or, on steps three and five, to a finding

of disability. A negative answer to any question, other than step three, leads to a

determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[2]

A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072,

1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

---

[1] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 4); Def.'s Consent (Doc. 5).

[2] *McDaniel* is a SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. See, e.g., Smith v. Comm'r of Soc. Sec., 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004). A claimant's RFC is what the claimant can still do—despite her impairments—based on the relevant evidence within the record. *Id*. The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy the claimant can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines ("Grids")[3] or (2) the testimony of a vocational expert ("VE").[4] *Id.* at 1239-40.

## II.   STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the correct legal standards were applied. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court

---

[3] The Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. See 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[4] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

may reverse the Commissioner's final decision when it is not supported by substantial evidence, or the proper legal standards were not applied in the administrative proceedings. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). A court is required to give deference to factual findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

For purposes of judicial review, "[s]ubstantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F.2d at 1145.

## III.    ADMINISTRATIVE PROCEEDINGS

Coleman was 54 years old on her alleged disability onset date. Tr. 94, 109. She has a high school education and some college courses. Tr. 324. Coleman also completed an Accounting Certificate Program and has past work experience as a records clerk for the City of Rome Police Department. Tr. 324-25. Coleman alleged disability due to diabetes, bipolar disorder, degenerative disc disease, irritable bowel syndrome, ADD, vertigo, high blood pressure, and arthritis. Tr. 323, 363.

In the administrative proceedings, the ALJ made the following findings with respect to the five-step evaluation process for Coleman's disability determination. At step one, the

ALJ found that Coleman has not engaged in substantial gainful activity since her alleged onset date. Tr. 15. At step two, the ALJ found that Coleman suffers from the following severe impairments: spine disorders, obesity, diabetes mellitus, diabetic peripheral neuropathy, anxiety, affective disorder, and personality disorder Tr. 16. At step three, the ALJ found that Coleman does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 16.

> The ALJ proceeded to determine Coleman's RFC, articulating it as follows:

> [Coleman] has the residual functional capacity to perform medium work . . . except that she can frequently stoop, kneel, crouch, and crawl; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; must avoid concentrated exposure to extreme cold and vibration; and must avoid all exposure to hazards, like machinery and unprotected heights. [Coleman] is limited to the performance of simple work, with no more than occasional interaction with the public or co-workers.

Tr. 18. At step four, the ALJ found that Coleman is unable to perform any past relevant work. Tr. 24. At step five, the ALJ relied on the testimony of a VE and determined that "considering [Coleman's] age, education, work experience, and [RFC], [she] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. 26. Those jobs include lumber sorter, laundry laborer, and box maker. Tr. 25. Accordingly, the ALJ found that Coleman was not disabled from May 3, 2016, through the date of his decision. Tr. 26.

## IV.   COLEMAN'S ARGUMENTS

Coleman presents three issues for review. First, Coleman argues that the ALJ failed to properly weigh the medical opinions in the record. Pl.'s Br. (Doc. 14) pp. 7-9; Reply (Doc. 20) pp. 1-4. Second, Coleman contends that the ALJ failed to properly consider her

eye impairments because (1) he did not order a consultative examination or recontact

Coleman's treating eye physician, and (2) he did not properly account for Coleman's visual

impairments in the RFC. Pl.'s Br. (Doc. 14) pp. 9-12; Reply (Doc. 20) pp. 4-8. Third,

Coleman argues that the ALJ improperly discredited her symptom testimony. Pl.'s Br.

(Doc. 14) pp. 12-15; Reply (Doc. 20) pp. 8-9.

## V.    ANALYSIS

### A.    The ALJ did not err in evaluating the reports of CRNP Hammock and Dr. Sturridge.

"'Medical opinions are statements from physicians . . . or other acceptable medical

sources that reflect judgments about the nature and severity of [the claimant's]

impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the

claimant] can still do despite impairment(s), and [the claimant's] physical or mental

restrictions.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011)

(quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).[5] If no judgment is made regarding

a claimant's functional limitations or the severity of an impairment, the statement is not a

medical opinion to which the ALJ is required to assign weight. *See Romero v. Comm'r of*

*Soc. Sec.*, 752 F. App'x 906, 908 (11th Cir. 2018) (holding that an ALJ is "not required to

state what weight he assigned to" a medical record that "fail[s] to address [a claimant's]

ability to work" or "do[es] not reflect what activities [the claimant] can or cannot

perform"). Importantly, here, a nurse practitioner is considered an "other" medical source

---

[5] For claims filed on or after March 27, 2017, the Social Security Administration has issued new revised regulations regarding evaluation of medical evidence, including medical source opinions. 20 C.F.R. § 404.1520c(a). Because Coleman applied for disability on May 19, 2016, the old regulations apply.

who cannot establish an impairment's existence but can present evidence on the impairment's severity. *Turner v. Astrue*, 2008 WL 4489933, at *13 (S.D. Ala. Sept. 30, 2008). Notably, however, an ALJ is not required to give significant or controlling weight to the opinion of someone who is not a "medical source." *See Miles v. Soc. Sec. Admin., Comm'r*, 469 F. App'x 743, 745 (11th Cir. 2012).

First, the ALJ did not err by failing to assign weight to the report of Coleman's treating nurse practitioner, CRNP Hammock ("Hammock"). Hammock assessed Coleman with "absolute glaucoma" and "unspecified cataract" for which she ordered a "documented dilated eye exam." Tr. 556. Thus, Hammock's report reflects Coleman's diagnoses of glaucoma and cataract and orders further diagnostic testing. But as a nurse practitioner, Hammock cannot establish the existence of a medically determinable impairment. *See* 20 C.F.R. § 404.1513(a), (d)(1); SSR 06-03p. Additionally, Hammock's report does not opine as to Coleman's functional limitations or the severity of her impairment and therefore does not constitute a medical opinion. *See Romero*, 752 F. App'x at 908 (stating that "physical complaints, [] medical history, the results of [] physical examinations and laboratory tests, and recommendations for and responses to treatment" are not medical opinions); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 603 n.7 (11th Cir. 2017) (holding that the ALJ need not explicitly state the weight given to a chiropractor's opinion because chiropractors are not acceptable medical sources).[6]

---

[6] In reply, Coleman argues that "the ALJ's fail[ure] to address the opinion of CRNP Hammock as it pertains to the severity of Ms. Coleman's symptoms caused by her severe impairments, particularly Ms. Coleman's spine disorders, obesity, diabetes mellitus, diabetic peripheral neuropathy, anxiety, affective disorder, and personality disorder" constitutes reversible error. Pl.'s Reply (Doc. 20) p. 2. However, in her original brief, Coleman does not argue that the ALJ failed to address Hammock's record pertaining to Coleman's spine

Second, the ALJ did not err by failing to assign weight to the report of Dr. Sturridge.

Dr. Sturridge diagnosed Coleman with "primary open-angle glaucoma, bilateral" and

"combined forms of age-related cataract, bilateral." Tr. 544. Dr. Sturridge found that

"glaucoma in both eyes" was "progressing." Tr. 611. Like Hammock's report, Dr.

Sturridge's report contains diagnoses but does not "reflect judgments about the nature and

severity of [Coleman's] impairment(s)[.]" *See* 20 C.F.R. § 404.1527. Instead, the records

contain medical opinions merely to the extent that they state Coleman's symptoms and

diagnoses.

Presenting medical opinions of symptoms and diagnoses is not the same as

presenting evidence of Coleman's disability or limitations because the former are not

probative as to Coleman's ability to work. *See Rivas v. Berryhill*, 2018 WL 328796, at \*3

(S.D. Fla. Jan. 9, 2018) (noting that "presenting medical opinions of symptoms and

diagnoses is not the same as presenting evidence of [the claimant's] disability or

limitations"). Because Dr. Sturridge's records lack the latter, the ALJ did not commit legal

error by failing to assign weight to Dr. Sturridge's report. *See id.* (holding that "[t]he ALJ

did not fail to consider the medical opinions of [three doctors] as to [the claimant's]

---

disorders, obesity, diabetes, neuropathy, or mental impairments. *See* Pl.'s Br. (Doc. 14) pp. 7-9. Instead, Coleman limits the argument to the ALJ's treatment of Hammock's assessment of her glaucoma and cataracts. *Id.* Of course, arguments raised for the first time in reply brief are waived. *Douglas v. Comm'r, Soc. Sec. Admin.*, 832 F. App'x 650, 655 (11th Cir. 2020) (finding that the claimant "abandoned any arguments regarding the effects of her other impairments on her RFC by failing to raise them in her initial brief"); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681, 683 (11th Cir. 2014) (A party abandons an issue by (1) making only passing reference to it or raising it "in a perfunctory manner without supporting arguments and authority" or (2) raising it for the first time in a reply brief). Accordingly, because Coleman failed to develop her argument relating to anything other than the ALJ's treatment of Hammock's report concerning Coleman's cataract and glaucoma, the undersigned declines to address whether the ALJ erred as to his treatment of Hammock's report as it relates to Coleman's other disorders.

functional capacity because these doctors did not specifically address [the claimant's] ability to work in their medical records"); *Bradley on behalf of Bradley v. Kijakazi*, 2022 WL 3031229, at *7 (N.D. Fla. July 15, 2022) (holding that because the statements of medical doctors "did not relate to [the claimant's] permanent functional limitations, they did not constitute a medical opinion which the ALJ was obligated to assign a weight.").

**B.      The ALJ adequately considered Coleman's eye impairments.**

Coleman argues that the ALJ failed to properly consider her eye impairments because he did not order a consultative exam or re-contact the treating eye physician. Pl.'s Br. (Doc. 14) pp. 9-12; Reply (Doc. 20) pp. 4-8. She also contends that the ALJ did not properly account for her visual impairments in her RFC. Pl.'s Br. (Doc. 14) pp. 9-12; Reply (Doc. 20) pp. 4-8.

**1.   The ALJ did not err by failing to order a consultative exam or re-contact Dr. Sturridge.**

"The [ALJ] has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Hamby v. Soc. Sec. Admin., Comm'r*, 480 F. App'x 548, 550 (11th Cir. 2012) (quoting *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007)) (internal quotations omitted). An ALJ may order a consultative examination or recontact a medical source when evidence in the record is insufficient—i.e., when it does not contain the information needed to make a decision—or inconsistent—i.e., when it conflicts with other evidence, contains an internal conflict, is

ambiguous, or does not appear to be based on medically acceptable findings. 20 C.F.R. §

416.920b (effective March 26, 2012 through March 26, 2017).

Here, the record before the ALJ contains two eye exams. Tr. 544-49; 611-19.

Coleman concedes that these exams were "sufficient evidence to determine [her] visual

limitations," Pl.'s Br. (Doc. 14) p. 11, and the undersigned agrees. *See Hamby*, 480 F.

App'x at 550 (holding that several eye exams on the record were "sufficient evidence for

the ALJ to make an informed decision"). Additionally, Coleman does not identify any

inconsistencies in the evidence that would prompt the ALJ to seek further clarification from

Dr. Sturridge or a consultative examiner. *Malone v. Colvin*, 2015 WL 1245180, at *6 (N.D.

Ala. Mar. 18, 2015) (holding that the ALJ did not err by failing to recontact a treating

physician or obtain a consultative examination when the claimant did not "identify what

functional limitations needed clarification"). Therefore, because Coleman has not shown

that the evidence before the ALJ was either insufficient or inconsistent, the undersigned

finds that the ALJ appropriately exercised his discretion in declining to further develop the

record as to Coleman's eye impairments.

**2. Substantial evidence supports the ALJ's RFC finding.**

The RFC "is the most [the claimant] can still do despite [her] limitations," and must

be based "on all relevant evidence in [the] case record." 20 C.F.R. § 416.945(a)(1). In

formulating a claimant's RFC, the ALJ must consider all severe and non-severe

impairments, and the ALJ must "provide a sufficient rationale to link substantial record

evidence to the legal conclusions reached." *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055

(S.D. Ala. 2016) (internal quotations and citations omitted). However, the ALJ is not

required to refer to every piece of evidence, so long as his RFC finding is not arbitrary and allows the reviewing court to determine that he considered the claimant's medical condition as a whole. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1326 (11th Cir. 2021) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

Coleman argues that the ALJ's RFC determination is not supported by substantial evidence because it fails to address her ability to see, which includes her depth perception, near acuity, far acuity, and field of vision. Pl.'s Br. (Doc. 14) p. 12; Reply (Doc. 20) p. 4. In support, Coleman points to three records wherein her eye conditions were addressed. First, on September 6, 2017, Coleman reported to Alabama Eye Physicians & Surgeons. Tr. 544. At that visit, she was assessed with "[p]rimary open-angle glaucoma bilateral moderate stage"; "no retinopathy"; "age-related cataract, bilateral"; and "unspecified exotropia OS." Tr. 544. For these conditions, it was recommended that Coleman be "observe[d]" and undergo further "eval[uation] when she returns." Tr. 544. Second, on September 19, 2017, Coleman's general practitioner directed her to "follow-up with ophthalmology" for her glaucoma/cataracts. Tr. 556. And third, on October 11, 2017, Coleman returned to Alabama Eye Physicians & Surgeons for follow-up. Tr. 611. At that visit, Coleman complained of itching, blurry vision, and glare with headlights. Tr. 611.

While the ALJ's opinion does not explicitly address Coleman's eye impairments, it is apparent that the ALJ considered the medical records cited by Coleman wherein those impairments were diagnosed and discussed. Indeed, when addressing Coleman's diabetes, the ALJ noted that "[t]reatment records indicated that [Coleman] had no retinopathy," an observation made during Coleman's September 6 visit to Alabama Eye Physicians &

Surgeons. Tr. 21, 544. Additionally, the ALJ noted medical records reflecting "medication adjustments or alterations to attempt optimum control of [her diabetes]." Tr. 21. One such medical record referenced by the ALJ was 13F, which is the October 11 follow-up treatment record from Alabama Eye Physicians & Surgeons. Tr. 21, 611. These statements show that, although the ALJ did not discuss Coleman's eye impairments in detail, he considered Coleman's eye impairments as a whole. *See, e.g.*, *Dyer*, 395 F.3d at 1211. The ALJ was not required to do more.

Additionally, Coleman points to no evidence showing that her eye impairments had any effect on her ability to perform medium work and more specifically, the jobs cited by the VE. With the possible exceptions of Coleman's complaints of blurry vision and glare, the records Coleman cites do not suggest any functional limitations related to her eye diagnoses, and Coleman does not point to any other evidence showing any functional limitations arising from her glaucoma or cataracts. Thus, to the extent that Coleman experiences any symptoms related to her glaucoma and cataracts, she has not shown that those symptoms prevent her from performing medium level work or the particular jobs cited by the VE.[7] Accordingly, if the ALJ erred by failing to discuss in depth Coleman's eye impairments during his RFC determination, Coleman has not shown that any such error was harmful.

---

[7] *See Malone v. Colvin*, 2015 WL 1245180, at *2 (N.D. Ala. Mar. 18, 2015) (noting that testimony from a VE indicated that a claimant "limited by visual deficits, including blindness in the left eye," could perform medium work and specifically the job of "laundry laborer" and that the ability to perform the job of "laundry laborer" was not affected by near or far acuity).

**C.    The ALJ properly articulated reasons for discrediting Coleman's testimony.**

"If the ALJ decides not to credit a claimant's testimony as to her [disabling symptoms], he must articulate explicit and adequate reasons for doing so . . . with substantial supporting evidence in the record." *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)); *see also Holt v Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). When considering a claimant's subjective complaints, an ALJ may discount allegations of disabling symptoms based on the claimant's lack of treatment or generally conservative treatment. *See, e.g.*, *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996). But while "refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability," "poverty excuses noncompliance." *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988). If an ALJ "'primarily if not exclusively' relies on a claimant's failure to seek treatment, but does not consider any good cause explanation for this failure," a court should remand for further consideration. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268 (11th Cir. 2015) (quoting *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003)). "However, if the ALJ's determination is also based on other factors, such as RFC, age, educational background, work experience, or ability to work despite the alleged disability, then no reversible error exists." *Henry*, 802 F.3d at 1268 (citing *Ellison*, 355 F.3d at 1275).

Here, Coleman argues that the ALJ improperly drew a negative inference regarding her lack of treatment and/or noncompliance with her medication without first properly developing the record as to her ability to afford such treatment and medication. Pl.'s Br.

13

(Doc. 14) pp. 12-16. At the hearing before the ALJ, Coleman testified that after she lost

her job, she moved to Alabama to live because she could not financially support herself.

Tr. 72. She claimed that she "didn't see a psychiatrist or a therapist for a long time" because

she "was unable to financially live on her own." Tr. 72. Additionally, she testified that she

has been unable to obtain radiological imaging for her spine "because [she] can't afford it"

and that she can no longer obtain treatment from her ophthalmologist because "[she] don't

[sic] have insurance." Tr. 76, 84. This testimony placed the ALJ on notice that Coleman's

financial resources resulted in a possible gap in her medical treatment.

In his opinion, the ALJ drew negative inferences regarding Coleman's lack of

treatment without explicitly discussing her ability to afford treatment. The ALJ specifically

considered Coleman's lack of treatment in three areas: (1) her musculoskeletal complaints,

(2) her diabetes, and (3) her mental impairments. *See generally* Tr. 444-643. Generally, in

addressing each condition, the ALJ noted that Coleman did not seek regular and/or

aggressive treatment for the impairment. *See* Tr. 20, 21, 22. However, in addition, the ALJ

noted that the records showed, *inter alia*, mild/minimal findings, some normal

examinations, and response to treatment. *Id.*

In his overall finding that Coleman's allegations of her impairments, symptoms, and

limitations were not supported by the evidence, the ALJ stated the following:

> In reaching a determination of disability, the undersigned has fully
> considered all allegations made by [Coleman] at her hearing regarding
> impairments, symptoms, and limitations, and the undersigned finds that the
> objectively demonstrable evidence of record has failed to support that
> [Coleman] is as impaired as she alleged at her hearing and in documentation.
> After considering the evidence related to the documented severe
> impairments, *the undersigned finds that there is nothing that would preclude*

14

*[Coleman's] performance of work activity as set forth in the [RFC] determination herein.* The undersigned notes that *no treating or consultative physician has persuasively opined that [Coleman] possessed disabling functional limitations as a result of any condition or from any resulting symptoms.* The undersigned finds that there is *no objective documentation that [Coleman's] performance of daily activities has been substantially impaired due to her diagnosed conditions.*

As previously noted, the undersigned recognizes *the paucity of medical evidence* in this case for complaints surrounding her alleged impairments and finds it reasonable to assume that if [Coleman] were experiencing difficulties to a disabling degree, *she would have presented to her physicians for persistent, regular, and ongoing treatment.* There is *no indication that [Coleman's] impairments would be resistant to either alleviation or control with the proper and regular use of the appropriate prescription medications,* if taken as prescribed. Further, there is *no indication from the record that [Coleman] was unsuccessfully tried on alternative medications in an attempt to find medications that did not produce adverse effects.*

Based on a review of the medical evidence of record, as well as [Coleman's] testimony at the hearing, the undersigned finds that the preponderance of the evidence contained in the record does not support [Coleman's] allegations of totally incapacitating pain and other symptomatology and that [Coleman's] statements regarding the severity, frequency, and duration of her symptoms are overstated. The record fails to document persistent, reliable manifestations of a disabling loss of functional capacity by [Coleman] resulting from her reported symptomatology, and *all of the above factors* lead the undersigned to a conclusion that [Coleman's] alleged symptoms and conditions are not of a disabling degree. After considering the entirety of the record, the undersigned concludes that [Coleman] would not be precluded from performing the requirements of work activity on a regular and sustained basis as set forth in the [RFC] statement herein.

Tr. 24 (emphasis added).

In summary, then, the ALJ discounted Coleman's symptom testimony for at least five reasons. *First*, the ALJ found that there was no objective evidence showing that Coleman could not perform work activity within her RFC. Tr. 24. *Second*, the ALJ found that no treating or consulting physician persuasively opined that Coleman had disabling

symptoms. Tr. 24. *Third*, the ALJ concluded that there was no objective documentation that Coleman's daily activities were "substantially impaired" because of her impairments. Tr. 24. *Fourth*, the ALJ noted the "paucity of medical evidence" and surmised that if Coleman were experiencing difficulties to the degree she claimed, she "would have presented to her physicians for persistent, regular, and ongoing treatment." Tr. 24. *Fifth*, the ALJ concluded that Coleman's impairments were not resistant "to alleviation or control with the proper and regular use of the appropriate prescription medications." Tr. 24.

At least three of the five reasons set forth by the ALJ for discounting Coleman's testimony do not involve her lack of treatment. Indeed, the ALJ concluded that (1) there was no evidence showing that Coleman was unable to perform work based on her RFC; (2) no physician persuasively concluded that Coleman had disabling symptoms preventing her from working; and (3) there was no documentation indicating that her impairments substantially interfered with her daily activities. Because these reasons are not grounded in Coleman's inability to afford treatment, the undersigned finds that the ALJ did not rely "primarily if not exclusively" on Coleman's lack of treatment to discount her symptom testimony. As such, to the extent the ALJ erred by drawing a negative inference regarding Coleman's lack of treatment, such error is harmless and not reversible.[8]

---

[8] *See Beegle v. Soc. Sec. Admin, Comm'r*, 482 F. App'x 483, 489 (11th Cir. 2012) ("Additionally, Beegle argues that the ALJ drew an improper adverse inference against him when, in support of her rejection of his claim that he could not work because of his right knee pain, she considered that Beegle: (1) did not take prescription drugs; (2) did not seek treatment from any physician other than Dr. Hardy from October 2006 to April 2008; and (3) did not seek treatment after April 2008. However, the record reflects that the ALJ largely based her findings on Dr. Hardy's opinions, not Beegle's lack of treatment. Beegle also claims that the ALJ drew an improper adverse inference when, in finding that he was not disabled because of his left knee pain or carpal tunnel syndrome, the ALJ cited the fact that he had not sought treatment for his left knee pain or carpal tunnel syndrome. However, the record further shows that the ALJ primarily based her

To be sure, Coleman claims that she was unable to obtain treatment between December 2017 and May 2019. Pl.'s Br. (Doc. 14) p. 14. It is possible that—had Coleman sought treatment during that period—the evidence generated could undermine the reasons the ALJ discounted Coleman's testimony that are unrelated to her ability to afford treatment. However, it is equally possible that the evidence generated from that time frame would further support the ALJ's conclusion. Importantly, when reviewing the evidence both before and after the period in which Coleman claims she could not afford treatment, the ALJ concluded that the evidence supported his RFC finding. The undersigned declines to speculate as to whether hypothetical evidence from December 2017 through May 2019 would alter the ALJ's RFC finding or underlying reasoning.

## VI.    CONCLUSION

For the foregoing reasons, it is

---

findings on Dr. Jin's report and evidence of Beegle's activities that contradicted his claim."); *Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 817 (11th Cir. 2011) ("In this case, even if we were to accept Brown's interpretation that the ALJ drew an adverse inference from the fact that he did not seek treatment between November 2007 and May 2008, Brown has not shown reversible error. The main reason why the ALJ discredited Brown's testimony was that his assertions of disabling pain were not supported by the medical evidence in the record, which described a relatively conservative pattern of treatment. Because the gap in medical treatment did not play a major role in the ALJ's decision, any error in considering that gap in treatment was harmless."); *Barnes v. Comm'r of Soc. Sec.*, 2019 WL 5110697, at *12 (M.D. Fla. Aug. 2, 2019) ("Barnes shows no reversible error in the ALJ's failure to develop the record on her ability to afford treatment before drawing a negative inference from the absence of treatment during the last 18 months of the relevant period[.] As the Commissioner observes, 'Other than her testimony years later, [Barnes] has not pointed to any evidence in the record that she was unable to afford or obtain additional treatment for her mental impairments,' . . . and, to the contrary, she had Lexapro prescriptions refilled during the relevant period and requested a referral to a psychiatrist or endocrinologist in July 2007. . . . Moreover, the ALJ did not use the absence of treatment during the last 18 months of the relevant period alone as a reason to determine Barnes had no severe mental impairment during the relevant period; "the ALJ also reasonably considered the absence of severe 'ongoing symptoms' in the available treatment findings from Dr. Willets and the Harbor Center []; only mild limitations []; and the absence of episodes of decompensation.'").

ORDERED that the Commissioner's decision is AFFIRMED. A separate final judgment will issue.

DONE this 16th day of February, 2023.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE